**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | |
|---|---|
| **In re: Penn Virginia Corporation, et al.,** | Case No. 16-32395-KLP |
| **Debtors.** | Chapter 11 |
| | |
| **Roman J. Koropey,** | |
| **Plaintiff,** | |
| | |
| v. | AP No. 17-03030-KLP |
| | |
| **Penn Virginia Corporation,** | |
| **Defendant.** | |

**<u>MEMORANDUM OPINION</u>**

Before the Court is the motion filed on behalf of Defendant Penn Virginia Corporation and its reorganized debtor affiliates (the "Reorganized Debtors")[1] to dismiss the complaint filed by Plaintiff Roman J. Koropey.[2] A hearing on the motion (the "Motion" or the "Motion to Dismiss") was held on April 5, 2017, at which the Court heard the argument of the parties and took the matter under advisement. Having considered the record and the argument of the parties, the Court will grant the Motion.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, included: Penn Virginia Corporation (4320); Penn Virginia Holding Corp. (7384); Penn Virginia MC Corporation (0458); Penn Virginia MC Energy L.L.C. (0462); Penn Virginia MC Operating Company L.L.C. (0466); Penn Virginia Oil & Gas Corporation (7929); Penn Virginia Oil & Gas GP LLC (3686); Penn Virginia Oil & Gas LP LLC (8109); Penn Virginia Oil & Gas, L.P. (9487).

[2] The Court notes that while the cover sheet for this adversary proceeding names as defendants "Penn Virginia Corporation et al," the actual Complaint lists only Penn Virginia Corporation as defendant. The Motion to Dismiss was filed on behalf of Penn Virginia Corporation and all of its reorganized debtor affiliates.

**Jurisdiction and Venue**

The Court has subject matter over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (O) in which final orders and judgments may be entered by a bankruptcy judge subject to the right of appeal under 28 U.S.C. § 158. This Court has venue pursuant to 28 U.S.C. § 1408.

**Procedural background, facts, and positions of the parties**

On May 12, 2016 (the "Petition Date"), the Debtor and ten debtor affiliates (collectively "the Debtors") each filed petitions with the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. The Debtors operated their businesses and managed their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

On their path to obtaining confirmation of a chapter 11 plan, the Debtors addressed various issues, including those raised by an ad hoc committee of equity security holders (the "Equity Committee" or the "Committee"). The Equity Committee consisted of 18 shareholders who collectively owned in excess of 2.6 million of the approximately 88 million

2

outstanding shares of common stock of Penn Virginia Corporation.[3] On June 11, 2016, the Equity Committee filed a lengthy objection to the Debtors' motion seeking authority to assume a restructuring support agreement entered into prepetition (the "RSA"). The motion to assume the RSA also sought authority to assume a backstop commitment agreement (the "Backstop Commitment Agreement")[4] and certain exit commitment letters (the "Exit Facility")[5] (collectively, with the RSA, the "Agreements"). The Equity Committee asserted, among other things, that the Debtors had taken a write-down of $2.7 billion in value between February 2015 and the filing of their bankruptcy petitions without sufficient explanation and argued that the Debtors had not exercised sound and reasonable business judgment when entering into the Agreements. [Docket No. 275]. Therefore, it argued, the Debtors had failed to satisfy §§ 363 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 363 and 365, and assumption of the Agreements should not be approved.

A hearing on the motion to assume the Agreements and the objections thereto[6] was held on June 13, 2016. At the hearing, the Court admitted thirty-five exhibits into evidence and heard the testimony of the Debtors'

---

[3] See Exhibit A to the Verified Statement of LeClairRyan filed on June 7, 2017. [Docket No. 199].

[4] The Backstop Commitment Agreement backstops a $50 million rights offering. (Disclosure Statement ¶IV(B)(2)).

[5] The Exit Facility had an "initial availability of up to $128 million." Disclosure Statement ¶IV(B)(3).

[6] The United States Trustee and Republic Midstream, LLC, and Republic Midstream Marketing, LLC, also filed objections to the assumption of the Agreements. [Docket Nos. 218 and 189].

3

chief restructuring officer as well as the testimony of a representative of Jefferies LLC, the Debtors' investment banker. After consideration of the evidence presented and the argument of the parties, the Court overruled the Equity Committee's objection and, on June 14, 2016, entered an order approving the assumption of the Agreements. [Docket No. 290].

On June 14, 2016, the Equity Committee filed an objection to the Debtors' disclosure statement (the "Disclosure Statement") on the grounds that, among other things, the Debtors' original chapter 11 plan was not confirmable given its lack of clarity regarding the Debtors' asserted loss in value and the treatment of certain third party releases as they affected the holders of equity interests.[7] [Docket No. 294]. The Equity Committee also filed a motion to appoint an official committee of equity security holders (the "Official Equity Committee Motion") on July 14, 2016. [Docket No. 422]. The Debtors opposed the Official Equity Committee Motion.

The Equity Committee and Debtors agreed to a settlement that included, among other things, the following: (a) the Equity Committee agreed to withdraw and/or not pursue: (i) the Official Equity Committee Motion; (ii) certain document requests; and (iii) any objection to the Debtors' proposed plan; (b) the Debtors agreed to seek confirmation of a second amended plan that removed all members of the Equity Committee from the scope of the

---

[7] Specifically, the Equity Committee's objection to the Disclosure Statement claimed that "[n]o information is provided in the Disclosure Statement concerning the claims or potential claims that would be released under the Plan and nor is any justification for the broad non-debtor, third-party releases and exculpations in the Plan."

4

plan's third-party releases; and (c) the Debtors and the Ad Hoc Committee of Noteholders agreed to support the allowance of an administrative claim under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) in favor of the Equity Committee's actual and necessary expenses incurred by its counsel in connection with their representation of the Equity Committee (the "Settlement"). The Settlement was memorialized in the term sheet filed on August 2, 2016 [Docket No. 495], which became an additional exhibit to the Debtors' second amended plan.[8]

A hearing on the Disclosure Statement was held on June 27, 2016, at which the Court approved the Disclosure Statement and overruled all unresolved objections thereto.[9] On June 28, 2016, the Court entered an order approving the Disclosure Statement (the "Disclosure Statement Order"). [Docket No. 371]. The Disclosure Statement was supported by detailed financial information regarding the Debtors, in the form of a liquidation analysis (attached as Exhibit C to the Disclosure Statement), financial projections (attached as Exhibit F to the Disclosure Statement), and various other documents (collectively, the "Disclosure Statement Exhibits").

On July 28, 2016, the Plaintiff filed an objection to the Debtors' first amended chapter 11 plan on grounds similar to those raised by the Equity Committee in its objection to the Disclosure Statement. [Docket No. 492]. In his objection, Plaintiff stated that he and his wife owned 32,300 shares of

---

[8] A second amended plan was filed with the Court on August 3, 2016. [Docket No. 501].
[9] The United States Trustee and Republic Midstream, LLC, and Republic Midstream Marketing, LLC, also filed objections to the Disclosure Statement. [Docket Nos. 296 and 288].

5

common stock in Debtor Penn Virginia Corporation. As an equity holder, the Plaintiff objected to the provision that all equity interests would be cancelled and holders of such interests would receive no distribution under the plan.[10] Plaintiff requested the appointment of an official shareholder committee. Plaintiff also challenged the value of the Debtors' estates, alleging that more equity existed than was being claimed by the Debtors.

At the August 11, 2016, confirmation hearing on the Debtors' second amended plan (the "Plan"), the Court received evidence and heard the argument of the parties, Plaintiff among them, including arguments as to the value of the Debtors' estates and whether there was equity available from which to make distributions to equity shareholders. The Court overruled Plaintiff's objection and ordered confirmation of the Plan. At the confirmation hearing, the Court found specifically that there was "no value here . . . that would enable equityholders [sic] to receive anything in a liquidation." (Transcript 105, ll 6-9). On August 11, 2016, the Court entered its order confirming the Plan [Docket No. 581] (the "Confirmation Order") and overruling any remaining objections.[11]

---

[10] Although the Plaintiff's objection to confirmation was filed as an objection to the Debtors' first amended plan and prior to the filing of the second amended plan, the Plaintiff's objection was considered in connection with the confirmation of the second amended plan (the "Plan").

[11] The Confirmation Order provides that "[t]o the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan (including the payment or amount of the Cure amounts with respect to any Assumed Contract, or the assumption by the Debtors of any of the Assumed Contracts) have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record at the Confirmation Hearing, all such objections are overruled on the merits." Confirmation Order ¶ II(A)(68).

6

Several conditions had to be met before the Plan could become effective. Section 9.1 of the of the Plan required that, among other things: (i) the Debtors establish a professional fee escrow, which account was to be funded with over $10 million to satisfy professional fees; (ii) the closing of the Backstop Commitment Agreement occur concurrently with the occurrence of the Plan's effective date; (iii) the closing of the Exit Facility occur concurrently with the occurrence of the effective date; (iv) all conditions precedent to the issuance of the new common stock in the Reorganized Debtors occur;[12] (v) the new organizational documents for the Reorganized Debtors be duly filed; and (vi) various other documents be in full force and effect. The Debtors satisfied the conditions precedent and the Plan became effective on September 12, 2016 (the "Effective Date"). [Docket No. 633].

Since the Effective Date, the Reorganized Debtors have objected to and expunged or amended hundreds of claims [Docket Nos. 699, 700, 701, 728, 730, 766, 768, 769, and 770] (the "Omnibus Objections"). They have also incurred substantial fees for professionals related to post-bankruptcy issues. *See, e.g.,* Quarterly Report of Debtor in Possession (the "Operating Report") [Docket No. 782].

The Reorganized Debtors have taken additional steps to consummate the Plan. Among other things, the Plan authorizes certain parties to participate in a rights offering (the "Rights Offering") (as defined in the Plan). Procedures for the Rights Offering (the "Rights Offering Procedures") were

---

[12] See Disclosure Statement ¶IV(B)(1).

7

approved by the Court in the Disclosure Statement Order [Docket No. 371]. The Plaintiff did not object to the Disclosure Statement or the Rights Offering Procedures. Pursuant to the Rights Offering Procedures, various parties were either permitted to or obligated to purchase shares of the Reorganized Debtors at a set rate. Wexford Capital LP and Strategic Value Partners LLC, two parties to the Backstop Commitment Agreement that obligated themselves to support the Debtors' restructuring process early on, purchased shares pursuant to the Rights Offering Procedures.

The Complaint. On February 7, 2017, 180 days after entry of the Confirmation Order, the Plaintiff filed his complaint seeking to revoke the Confirmation Order or to have the Court fashion some other remedy (the "Complaint"). Plaintiff alleges that he owned common shares of "Penn Virginia Corporation et al." He states that he owned the shares "through a brokerage account jointly with his wife and through the Roman J. Koropey, Ltd. Profit Sharing Plan brokerage account." (Complaint ¶ 3)

In the Complaint, the Plaintiff argues that even though the Court overruled his objections to confirmation of the Plan, the increased value of shares in the Reorganized Debtors after the Effective Date is grounds to set aside the order confirming the Plan. He pleads that the shares in the Reorganized Debtors were originally offered for $3.18 per share but subsequently traded in the open market for amounts between $40 and $52 per share. He asserts that the increase in value is evidence that the Debtors

8

falsely represented the value of those shares during the confirmation proceedings.  Citing § 1144 of the Bankruptcy Code, 11 U.S.C. § 1144, which provides that a confirmation order may be revoked "if and only if such order was procured by fraud," Plaintiff requests that the Confirmation Order be revoked and that the Debtors propose a new plan that "reflects the actual value of the Debtor and participation of equity."  Alternatively, he prays that the Court modify the Confirmation Order so as to "remedy the unjust enrichment of the Backstop Commitment Parties and the inequitable treatment of equity."  Failing that, he requests an award of damages or "such other equitable relief as may be appropriate."

The Motion to Dismiss.  In the Motion to Dismiss the Complaint, the Reorganized Debtors first argue that the Complaint is time-barred, having been filed *on* the 180th day after the entry of the confirmation order, whereas § 1144 requires such a motion to be filed *before* the 180th day.  The Reorganized Debtors also argue that the Complaint has failed to state a cause of action for fraud.  In particular, the Reorganized Debtors argue that the Complaint is deficient because it does not plead the basis for the allegation of fraud with the requisite specificity.

The Reorganized Debtors also argue that the Plaintiff does not "provide any statutory basis, case law or other standard" to support his request for equitable relief, nor does the Plaintiff suggest what that relief

9

might be. They argue that the Plaintiff has had adequate remedies at law, which precludes the award of an equitable remedy.

The Reorganized Debtors further argue that the Plaintiff's request for equitable relief is equitably moot and that the Plaintiff is now estopped from making such a request. They contend that the Plaintiff is, in essence, asking the Court to reconsider the order approving the Rights Offering Procedures.[13]

**Analysis**

The standard for a motion to dismiss a complaint under Bankruptcy Rule 7012, Fed. R. Bankr. P. 7012, incorporating Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6), is that the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has further instructed that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[13]The Reorganized Debtors also claim that the Plaintiff lacks standing, as he failed to include his wife as a necessary party plaintiff. They point out that to add her at this point is impossible, as the 180-day period within which motions to revoke confirmation has already run. The Court need not address this argument, in light of the determinations contained herein.

10

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

As a preliminary matter, the Court must determine whether the Complaint was time-barred. Section 1144 of the Bankruptcy Code allows a party in interest to seek revocation of a confirmation order that was procured by fraud, but such a complaint must be filed "at any time *before* 180 days after the date of the entry of the order of confirmation" (emphasis added). Here, the Complaint was filed *on* the 180th day following the date of the entry of the Confirmation Order, not *before* that date. Therefore, based upon the clear language of § 1144, the Complaint is time-barred to the extent that it prays for the revocation of the Confirmation Order, and the Plaintiff may not request and the Court may not grant revocation of the Confirmation Order. *See Little v. Amber Hotel Corp. (In re Amber Hotel Corp.)*, Case No. CV 14-9254 FMO, 2015 WL 5104678, at *2-3 (C.D. Cal. Aug. 31, 2015).[14]

The Plaintiff argues that even if the Court is barred from revoking the Confirmation Order, it nonetheless has the power to award damages for any injuries the Plaintiff may have incurred as a result of the Reorganized Debtors' alleged fraud. Thus, the Court must examine whether the Complaint has successfully stated a cause of action for fraud and whether an

---

[14] In calculating the 180-day period, the refiling of the Confirmation Order to attach the proper version of the Plan being confirmed is of no moment. *See* 8 Collier on Bankruptcy ¶ 1144.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("If an order is amended for clerical or other technical reasons, a new 180-day period should not begin."); *Dale C. Eckert Corp. v. Orange Tree Assocs. (In re Orange Tree Assocs.)*, 961 F.2d 1445 (9th Cir. 1992).

11

award of damages might be permissible, despite the unavailability of relief under § 1144.

Courts have reached varying results when addressing the question of whether the time limit of § 1144 bars a party from seeking other relief based upon a debtor's alleged fraud. The decisions vary because, while "a court is not without power to remedy an injustice created by a fraud in a bankruptcy case," 8 Collier on Bankruptcy ¶ 1144.04[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), it must not let such relief become a *de facto* revocation of the order confirming the plan.

At the outset, the Court notes that the Plaintiff did not object to the Rights Offering Procedures, nor did he contest the order approving the Rights Offering Procedures. That order was entered on June 28, 2016. Plaintiff also did not appeal the August 11, 2016, order confirming the Plan, in which the Court specifically found that the Plan satisfied the requirement of § 1129(b) of the Bankruptcy Code, 11 U.S.C. § 1129(b), by having terms fair and equitable to an impaired class of claims or interests that has not accepted the plan. Section 1129(b) defines "fair and equitable" as follows:

> (b)(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
> . . .
> (C) With respect to a class of interests--
> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption

      price to which such holder is entitled, or the value of such interest; or
          (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

As previously noted, in determining that the plan satisfied the "fair and equitable" requirement, the Court, after hearing argument and receiving evidence at the confirmation hearing, specifically found that there was "no value here . . . that would enable equityholders [sic] to receive anything in a liquidation." (Transcript 105, ll 6-9). The Plaintiff now asks the Court to revisit that finding, arguing that there was, during the confirmation process, a "misrepresentation of the true value of the Debtor's assets and its new stock" because the stock issued pursuant to the Rights Offering was allegedly valued at $3.18 per share but subsequently traded much higher in the open market. Thus, the Plaintiff extrapolates that "[t]he undervaluation of the Company's assets and its new stock materially distorted the Plan and the opportunity for equity to participate in the Plan."

The Court declines to revisit its prior findings as to the value of the Reorganized Debtors or the shares issued pursuant to the Rights Offering. The Plaintiff has not advised the Court that he has new evidence to support his theory that the Confirmation Order was obtained by fraud but rather recites the facts available and presented at the time of confirmation. The only ground for his allegation of fraud is the subsequent rise in value of the stock issued pursuant to the Rights Offering.

13

The Plaintiff's argument that the rise in the stock prices of the Reorganized Debtors indicates prior fraud is insufficient to withstand a challenge under Rule 12(b)(6). The argument relies on a logical fallacy similar to that of *post hoc ergo propter hoc*. That logical fallacy erroneously assumes that if an event follows a previous event, the prior caused the latter. Courts have found that the mere temporal relationship of the two events is insufficient to establish causation.[15] While the Plaintiff does not argue that the confirmation process caused the rise in value, he posits that the rise in value following confirmation is proof of fraud in the confirmation process. However, as in the post *hoc ergo propter hoc* fallacy, this is mere speculation and does not in itself establish a nexus between the confirmation process and the increase in stock price. As pointed out by the Reorganized Debtors, many factors other than fraud may have led to the increase in the value of the shares issued pursuant to the Rights Offering, including market factors and oil prices.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, made applicable here by Rule 7009 of the Federal Rules of Bankruptcy Procedure, a party must "state with particularity the circumstances constituting fraud or mistake." A properly pled allegation of fraud must "describe the time, place,

---

[15] As explained by Judge Agee in his dissent in *Deltek, Inc. v. Department of Labor, Administrative Review Board*, 649 F. App'x 320, 337 (4th Cir. 2016), "**Post hoc** ergo **propter hoc** is 'a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.' *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1243 (11th Cir.2005); *see also Huss v. Gayden,* 571 F.3d 442, 459 (5th Cir.2009) (noting 'the **post hoc** ergo **propter hoc** fallacy assumes causality from temporal sequence'). The mere circumstance that protected activity precedes termination is not proof of a causal connection between the two."

14

and contents of the false representations, as well as the identity of the person making the representation and what benefit he obtained." *Granados v. Bank of America, N.A.*, No. 1-15-cv-752-GBL, 2015 WL 4994534, at *4 (E.D. Va. Aug. 19, 2015). Here, the Plaintiff does not identify any particular statement or act but relies only on the fallacious assumption that because the rise in stock prices occurred after the confirmation process, the confirmation process must have been tainted by fraud.  In making his allegations, the Plaintiff relies on what he terms the "misrepresentation of the actual value of the Debtor."  However, that issue has already been addressed at the confirmation hearing, has been ruled upon, has not been appealed, and is therefore final. All that remains upon which Plaintiff bases his allegation of fraud is the subsequent rise in the stock price. This, without more, is not enough to satisfy the requirements of Rule 9 or Rule 12, and the Court cannot find that the Plaintiff has pled sufficient factual content to allow a reasonable inference that the Reorganized Debtors engaged in fraud in the confirmation process, as required by Rule 12(b)(6) and *Twombly* and *Iqbal*.

Having found that the Complaint does not satisfy the requirements of either Rule 9 or Rule 12, the Court need not address the issue of whether the Complaint seeks, in the guise of seeking damages for fraud, to circumvent the time bar of § 1144.  However, the Court does note that courts awarding damages after § 1144's time bar do so only when the action would not affect the terms of the confirmed plan. In *In re Newport Harbor Associates*, 589 F.2d

15

20 (1st Cir. 1978), the First Circuit noted that an untimely action to revoke confirmation under the former Bankruptcy Act could not succeed, but observed that

> [o]ur opinion should not be read to suggest that the Debtors or other creditors who may have been injured by fraud are necessarily without other remedies in other forums. Cf. *Bizzell v. Hemingway*, 4 Cir., 1977, 548 F.2d 505, indicating that an action for damages or other relief, based on the federal securities laws or common law theories, may be available in the federal or state courts. It would appear that the doctrines of res judicata and collateral estoppel would not bar such an action, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan of arrangement.

589 F.2d. at 24.

Citing *Newport Harbor Associates*, the court in *Haskell v. Goldman, Sachs & Co.* (*In re Genesis Health Ventures, Inc.*). 340 B.R. 729 (D. Del. 2006), found that:

> "[w]hile it is true that creditors may not attack confirmation orders by simply characterizing their attempt as an independent cause of action, rather than a motion to revoke the order, the 180 day deadline in Section 1144 does not act as a bar to truly independent courses of action based on a debtor's wrongful conduct." *In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y.1990) (internal citations omitted); *see also In re Emmer Bros. Co.*, 52 B.R. 385, 391 (D.Minn.1985) ("creditors may not attack confirmation orders by simply characterizing the attempt as an independent cause of action rather than a motion to revoke the order"). **A claim is not independent where it is simply "an attempt to 'redivide the pie' by a disgruntled participant in the Plan."** *In re Coffee Cupboard*, 119 B.R. at 19. An independent cause of action can be maintained, however, "at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset

16

the confirmed plan of arrangement." *Id*. (quoting *Matter of Newport Harbor Associates*, 589 F.2d 20, 24 (1st Cir.1978)).

340 B.R. at 733 (emphasis added). The court in *Genesis Health Ventures* found that to award damages against the debtor would be merely an attempt to "redivide the pie, to upset the confirmed plan, and to negatively affect innocent parties and creditors." *Id*. Given the terms of the Plan here at issue and the status of the implementation of those terms, including the issuance of stock, the execution of the Agreements, the extensive postpetition claims resolution process, and the fees and expenses incurred postpetition, as outlined above, it appears incontrovertible that an award of damages would upset the confirmed Plan and affect innocent parties and creditors.

As the Court finds that the Plaintiff is time-barred from seeking revocation of the Plan and has failed to state a claim for fraud, the Reorganized Debtors' Motion to Dismiss will be granted. A separate order will be entered.

Signed: July 21, 2017

              _____/s/ Keith L. Phillips_____
              United States Bankruptcy Judge

Copies:

Entered on Docket: Jul 21 2017

Michael A. Condyles
Kutak Rock LLP
901 East Byrd Street Suite 1000
Richmond, VA 23219-4071

Jeremy S. Williams
Kutak Rock LLP
901 East Byrd Street Suite 1000
Richmond, VA 23219-4071

Roman J. Koropey
14 S. Bryn Mawr Avenue, Suite 210
Bryn Mawr, PA 19010